**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CHRYSLER PACIFICA FIRE RECALL PRODUCTS LIABILITY LITIGATION | MDL No. 3040 |

**MEMORANDUM OF PLAINTIFFS LAUREN HUNTINGTON, ANDREW BERZANSKIS AND MARGARET WILENSKY, SCOTT CARNEY, NICOLE AND STEPHEN COSTA, MICHAEL CHRISTIE, DIANE AND DAVID DAVIDSON, MICHAEL KEETH, ALICIA AND DAVID MALTZ, DIAHANN MESSEGUER, ELIZABETH NIEMIOJA, JAMES QUATTROPANI, ANDREW VENTURA, SPENCE VOSS, TRACY WHITMAN BRACE, KENT SCHUMANN, ALEXANDER SHUSTA, OWEN RYAN, TIM BANAS, JOHN LATACKI, SCOTT LEWANDOWSKI, DEVLIN SU, RUTH HOFFMAN, RICHARD GOLLAND, PATRICIA RANSOM, HELEN BARTEK, MICHAEL NATALE, JOHN SPRUANCE, SHAWN SHEEHAN, SEAN CLANCY, VERONICA BRYAN, MATTHEW BERGANTINO, TIM FERGUSON, AMI BENZUR, JARED GADOMSKI LITTLETON, CHRISTINE WINTER, SALYI VU, JACOB KITZMAN, CHAD FONG, MEAGAN AND CAL FEINDEISS, CLEA AND LADD VAN TOL, ELIAS AND MICHELLE TINIO RAMIRIEZ, AND JAVIN T. OLSON IN OPPOSITION TO PLAINTIFF SCOTT OLSEN'S MOTION TO TRANSFER ACTIONS TO THE NORTHERN OR CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED <ins>PRETRIAL PROCEEDINGS</ins>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

     A.    Plaintiffs ...................................................................................................2

     B.    Defendant .................................................................................................3

     C.    Overview of Claims .................................................................................3

     D.    Status of the Actions ...............................................................................7

III.    ARGUMENT .......................................................................................................7

     A.    Six Actions Do Not Warrant Centralization under § 1407 .......................7

     B.    Centralization Under § 1407 Is Unnecessary in Light of the First-To-File Rule ..............................................................................................8

     C.    If the Panel Deems a Venue Transfer Is Appropriate, Judge Kumar of the Eastern District of Michigan Is Highly Qualified and the Appropriate Judge to Adjudicate These Matters ...................................10

          1.    The Eastern District of Michigan Is Defendant's home district and will be the evidentiary center for the Actions. .......................10

          2.    Forty-nine plaintiffs from 24 different states have already chosen to bring their cases in the Eastern District of Michigan ............................................................................................11

          3.    The Eastern District of Michigan is a convenient forum for all litigants..............................................................................................12

          4.    Judge Shalina D. Kumar is an outstanding jurist who will efficiently and effectively manage the consolidated litigation. ...........................................................................................12

          5.    There is no rational basis to transfer the actions to any court in California. ..........................................................................................13

IV.    CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Auto. Wire Harness Sys. Antitrust Litig.*,
844 F. Supp. 2d 1367 (J.P.M.L. 2012)..............................................................10, 13

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)..............................................................7, 8, 9

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017).........................................................................................11

*Cedars-Sinai Medical Ctr. v. Shalala*,
125 F.3d 765 (9th Cir. 1997) ................................................................................2

*In re Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage &
Hour Litig.*,
829 F. Supp. 2d 1376 (J.P.M.L. 2011)....................................................................9

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
214 F. Supp. 3d 1354 (J.P.M.L. 2016)..............................................................11, 13

*In re Gerber Probiotic Mktg. & Sales Practices Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012)..............................................................8, 9, 10

*In re Gerber Prod. Co. Baby Food Litig.*,
No. 21-1977 (D.N.J. Sep. 13, 2021) ......................................................................8

*In re Glaceau VitaminWater Mktg. & Sales Practices Litig. (No. II)*,
764 F. Supp. 2d 1349 (J.P.M.L. 2011)..................................................................10

*In re GM LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*,
532 F. Supp. 3d 1413 (J.P.M.L. 2021)....................................................................9

*In re Michaels Stores, Inc., Pin Pad Litig.*,
844 F. Supp. 2d 1368 (J.P.M.L. 2012)....................................................................9

*In re Reciprocal of Am. (ROA) Sales Practices Litig.*,
281 F. Supp. 2d 1356 (J.P.M.L. 2003)..................................................................10

*In re Rio Hair Naturalizer Prod. Liab. Litig.*,
904 F. Supp. 1407 (J.P.M.L. 1995)......................................................................12

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices &
Prods. Liab. Litig.*,
704 F. Supp. 2d 1379 (J.P.M.L. 2010)..................................................................11

*In re Transocean Ltd. Sec. Litig.*,
    753 F. Supp. 2d 1373 (J.P.M.L. 2010)........................................................................8

*In re Truvia Natural Sweetener Mktg. & Sales Practices Litig.*,
    996 F. Supp. 2d 1377 (J.P.M.L. 2014)........................................................................9

*In re UpJohn Co. Antibiotic "Cleocin" Prod. Liab Litig.*,
    450 F. Supp. 1168 (J.P.M.L. 1978)..........................................................................12

### STATUTES

28 U.S.C. § 1407.................................................................................................. *passim*

### OTHER AUTHORITIES

*An inside look at FCA US: Ramp up with FCA360*, FCA (Oct. 15, 2015),
    https://www.prnewswire.com/news-releases/an-inside-look-at-fca-us-ramp-
    up-with-fca360-300161180.html ............................................................................11

011086-11/1891213 V3

## I.    INTRODUCTION

Plaintiffs Lauren Huntington, Andrew Berzanskis and Margaret Wilensky, Scott Carney, Nicole and Stephen Costa, Michael Christie, Diane and David Davidson, Michael Keeth, Alicia and David Maltz, Diahann Messeguer, Elizabeth Niemioja, James Quattropani, Andrew Ventura, Spence Voss, Tracy Whitman Brace ("Huntington Plaintiffs"), and Kent Schumann, Alexander Shusta, Owen Ryan, Tim Banas, John Latacki, Scott Lewandowski, Devlin Su, Ruth Hoffman, Richard Golland, Patricia Ransom, Helen Bartek, Michael Natale, John Spruance, Shawn Sheehan, Sean Clancy, Veronica Bryan, Matthew Bergantino, Tim Ferguson, Ami Benzur, Jared Gadomski Littleton, Christine Winter, Salyi Vu, Jacob Kitzman, and Chad Fong ("Schumann Plaintiffs"), and Meagan and Cal Feindeiss, and Clea and Ladd Van Tol ("Findeiss Plaintiffs"), and Elias and Michelle Tinio Ramirez, and Javin T. Olson ("Ramirez Plaintiffs" and all collectively, "E.D. Mich. Plaintiffs") respond in opposition to Plaintiff Scott Olsen's motion to transfer actions ("Motion") to the Northern or Central District of California pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings. Put simply, there is no need for the creation of an MDL in this case because there are too few cases and other means of consolidation are already underway to promote judicial economy and avoid duplicative actions.

Forty-nine plaintiffs have filed their cases in the Eastern District of Michigan, where Defendant FCA US, LLC ("FCA US" or "Defendant") is headquartered. Those plaintiffs have already agreed to consolidate their cases into a single case and filed a stipulation with FCA US to effect that consolidation on May 6, 2022. The result, upon consolidation, is that there are only five actions nationwide, one with 49 plaintiffs from 24 states (including California) in the Eastern District of Michigan, and four later-filed, single-plaintiff cases in California with only California plaintiffs. Moreover, *Huntington*, filed in the E.D. Michigan, was the first-filed case concerning the alleged defect in the Chrysler Pacifica Hybrid minivan, and FCA US has already filed in the

- 1 -

later-filed, California cases—*Olsen*, *Gomez*, *Reilman* and *Lawrence*—a motion to transfer each of them to the Eastern District of Michigan, or stay or dismiss them, under the "first-to-file" rule.[1] However, should the Panel decide to centralize, the actions should be transferred to the Eastern District of Michigan, where Defendant and the evidence are located, and where 90% of the Plaintiffs in the actions have already elected to file.

## II.    BACKGROUND

The Motion putatively involved nine actions pending in five judicial districts.[2] But at present, the E.D. Mich. plaintiffs in *Huntington*, *Schumann*, *Findeiss*, and *Ramirez* have stipulated to consolidation of their cases into a single 49-plaintiff action in the Eastern District of Michigan, and the other five (single-plaintiff) actions are in California (*Gomez* and *Lawrence* in the Northern District, *Reilman* in the Central District, and *Olsen* in the Southern District) and in the Eastern District of Pennsylvania (*Bagley*).

### A.    Plaintiffs

Plaintiffs in the actions are all owners or lessees of Chrysler Pacifica Hybrid vehicles who purchased or leased a new or used vehicle in the Unites States from an authorized Chrysler (FCA US) dealership. Each action (i) alleges that Plaintiffs purchased or leased the vehicles based upon omissions or misrepresentations made by FCA US; (ii) asserts injury and damages arising from FCA US's wrongful conduct; and (iii) alleges the same or similar conduct by FCA US. Plaintiffs

---

[1] *See, e.g.*, *Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) (when two actions involving the same parties and issues are filed in federal courts of concurrent jurisdiction, the "first-to-file" rule applies, giving the second court discretion to "transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy").

[2] The Schedule of Actions filed by Plaintiff Olsen (ECF No. 1-10) only listed seven actions because it omitted *Ramirez et al. v. FCA US, LLC*, No. 2:22-cv-10734-SDD-CI, which was filed in the Eastern District of Michigan on April 6, 2022, over a month before *Olsen* filed this Motion. On May 10, 2022, *Erica and James Bagley v. FCA US, LLC*, No. 5:22-cv-01797-JFL, was filed in the Eastern District of Pennsylvania and was noticed as a potential tag-along on May 25, 2022.

contend that they would not have purchased their vehicles, or would have paid less for them, but for the misrepresentations and omissions by FCA US.

The E.D. Mich. Plaintiffs are geographically diverse, residing in different states located across the country: California, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Rhode Island, Texas, Virginia and Washington. In contrast, the four plaintiffs in the four California cases all reside in California.

## B.    Defendant

Defendant FCA US LLC, formerly known as Chrysler Group, is a Delaware limited liability company organized and existing under the laws of the State of Delaware. FCA US's principal place of business and headquarters is at 1000 Chrysler Dr., Auburn Hills, MI 48326. FCA US is wholly owned by Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands.

## C.    Overview of Claims

This case arises because FCA US purposefully and intentionally, or at least recklessly, produced and sold Chrysler Pacifica Hybrid minivans with defective hybrid drive systems that can spontaneously explode and burst into flames, even when the vehicles are in the "key-off" position and parked.

If FCA US had conducted adequate pre-launch testing of the hybrid propulsion system in the Pacifica Hybrids, including stress and durability testing of the sort that is the norm for automobile manufacturers planning to market vehicles using volatile lithium ion batteries for propulsion, it would have learned of the unreasonable and catastrophic risks posed by the lithium-ion battery and the related components meant to enable the safe operation of the minivans in the Pacifica Hybrid in electric mode. FCA US was, therefore, at a minimum, reckless (and likely

worse) in its rush to release the first-ever plug-in electric hybrid minivan.

Model year 2017 and 2018 Chrysler Pacifica Hybrid minivans contain a defect in the hybrid propulsion system that can cause vehicle fires and explosions, even when the vehicles are parked with the ignition in the "off" position (the "Spontaneous Fire Defect"). The Spontaneous Fire Defect exposes putative class members to an unreasonable risk of accident, injury, death, or property damage in the event that their vehicle catches fire while in operation or, perhaps more commonly, spontaneously ignites while the vehicle is parked at the class member's home, in their garage, on a public street, or in a parking lot. The Spontaneous Fire Defect also exposes passengers, other drivers on the road, neighbors, owners of other cars parked near the Fire Defect Vehicles, and other bystanders to an unreasonable risk of accident, injury, death, and/or property damage.

The catastrophic fire risk is the direct result of a defect long known to, concealed by, and still unremedied by FCA US. Not only did FCA US conceal the defect from consumers both before and after their purchases of the premium-priced 2017–2018 model year Pacifica Hybrids (the "Fire Defect Vehicles"), but it also concealed its consequences, including the serious safety hazards and monetary harm caused by the Spontaneous Fire Defect—e.g., damage to a home and injury or death to persons inhabiting that home should the Fire Defect Vehicle spontaneously ignite while the vehicle is parked in an attached garage.

Some (but not all) of the known fire incidents have occurred while the vehicles are charging. Alarmingly to consumers, while FCA US contends that the root cause of the fires is unknown, it appears virtually certain that the defect is connected to the vehicles' high-voltage lithium-ion batteries and related components used to propel the vehicles when they are operating in electric mode. The high-voltage lithium-ion batteries in the Fire Defect Vehicles were made by LG Chem (now LG Energy Solution, or "LGES"). LGES also made the allegedly defective

batteries that caused fires in GM Chevy Bolt electric vehicles and Hyundai electric vehicles. In connection with the Chevy Bolt recalls, LGES agreed to pay GM $1.9 billion.

Though FCA US now admits to having received reports of a dozen fires connected with the hybrid propulsion system since 2019, it waited until February 2022 before issuing a recall of the Fire Defect Vehicles. However, FCA US is not offering owners and lessees of the Fire Defect Vehicles any remedy. Instead, FCA US "is advising owners of these hybrid vehicles to refrain from charging them, and to park them away from structures and other vehicles." FCA US does not tell Fire Defect Vehicle owners just what constitutes a "safe" distance from an exploding vehicle or explain what owners should do with their vehicles if they have no such place to park them. This places an unfair burden on class members who are unable to use the electric propulsion system for which they paid a $6,000 premium and are unable to park in their garage (and may have to park quite far away from their homes in order to park away from other vehicles).

Many Plaintiffs and putative class members are not even theoretically able to comply with FCA US's directive to park their Fire Defect Veicles a "safe" distance from structures or other vehicles near their residences, let alone at places they might wish to drive their vehicles. And, especially in this time of spiking gas prices, many class members see little choice but to charge their vehicles so that they can use them as intended, while they wait for FCA to come up with a fix. Still others, justifiably not wanting to bear the risk of a catastrophic fire, have sold their Fire Defect Vehicles at a massive loss as a result of FCA's conduct and inability or unwillingness to provide any sort of fix. The Hobson's choice foisted on consumers by FCA US is nothing short of outrageous. Not being able to plug in and charge the Fire Defect Vehicles defeats the central purpose of having a plug-in hybrid electric vehicle. Absent charging, the Fire Defect Vehicles must run exclusively on their gasoline engine, causing owners of Fire Defect Vehicles to consistently

- 5 -

purchase gasoline.

FCA US knew or should have known about the Spontaneous Fire Defect before the Fire Defect Vehicles went to market, and certainly knew well before it issued its confounding "recall," as evidenced by: (1) the significant knowledge of the fire risks of lithium-ion batteries prior to the time the Fire Defect Vehicles hit the market; (2) FCA US's evident decision to put profits over safety by not incorporating available safety technology in the Fire Defect Vehicles; (3) the rigorous pre-launch testing of the Fire Defect Vehicles and their hybrid propulsion that any responsible manufacturer would have conducted, including testing that would have revealed the batteries' propensity to simultaneously combust; (4) the consumer complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online; (5) its own investigation of fires in the Fire Defect Vehicles; and (6) the similar fire issues in other electric vehicles with LGES lithium-ion batteries. Stunningly, many of the Fire Defect Vehicles have already been recalled twice to remedy other defects that also created a risk of fire. The first such recall came in 2018 and the second in 2020.

FCA US offers no actual remedy for the Spontaneous Fire Defect and offers limited, if any, reimbursement to Fire Defect Vehicle owners and lessees for out-of-pocket expenses, loss of use, and loss of value. Because no repair is available, vehicle owners and lessees are left without a safely operable vehicle for an unknown and potentially lengthy period.

Because of FCA US's fraudulent concealment of the defect in violation of state consumer protection acts and common-law fraudulent concealment, its breaches of implied warranties of merchantability and its failure to act more quickly in disclosing and providing a remedy for the Spontaneous Fire Defect once the fires began occurring amongst putative class members, owners and lessees of Fire Defect Vehicles are injured in fact, incurred damages, and suffered

- 6 -

ascertainable losses in money and property. Had Plaintiffs and the putative class members known of the Spontaneous Fire Defect, then they would either not have purchased or leased those vehicles, or would have paid substantially less for them, or would have purchased non-hybrid versions of the vehicles, which cost at least $6,000 less. Fires in the Fire Defect Vehicles also necessitate expensive repairs, car rentals, car payments, towing charges, property damage, time off work, loss of use and other miscellaneous costs.

**D.    Status of the Actions**

*Huntington*, the first-filed action, was filed in the Eastern District of Michigan on March 8, 2022. Over the ensuing six weeks, three other actions were filed in the Eastern District of Michigan (*Schumann*, *Findeiss* and *Ramirez*) and four single-plaintiff actions were filed in California (*Olsen*, *Reilman*, *Lawrence* and *Gomez*). On May 6, 2022, three days *before* this Motion was filed, *Huntington* Plaintiffs, *Schumann* Plaintiffs, *Findeiss* Plaintiffs, and *Ramirez* Plaintiffs stipulated to the consolidation of their actions into a single action in the Eastern District of Michigan. On May 10, 2022, the *Bagley* action was filed in the Eastern District of Pennsylvania. On May 31, 2022, Defendant FCA filed in each of the *Olsen*, *Reilman*, *Lawrence* and *Gomez* actions a motion to transfer each of those cases to the Eastern District of Michigan, or stay or dismiss them under the first-to-file rule. Other than this motion practice to move and consolidate the actions to the Eastern District of Michigan, no litigation has occurred in any of the actions.

## III.    ARGUMENT

**A.    Six Actions Do Not Warrant Centralization under § 1407**

The J.P.M.L. disfavors centralization "[w]here there are only a limited number of actions and the involved parties are amenable to Section 1404 transfer, such transfer is generally preferable to centralization under Section 1407." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (denying § 1407 motion for centralization)

(citing *In re Gaiam, Inc., Water Bottle Mktg., Sales Practices & Prods. Liab. Litig.*, 672 F. Supp. 2d 1373, 1374-75 (J.P.M.L. 2010) (denying § 1407 transfer of two actions)). The *Best Buy* case involved five pending lawsuits. As noted by the Panel, "***Indeed, centralization under Section 1407 should be the last solution after considered review of all other options***." *Best Buy*, 804 F. Supp. 2d at 1378 (emphasis added).

As the Panel has previously noted, "where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). The *Olsen* Plaintiff here make no such showing. Their papers correctly note the substantial overlap of facts, claims and parties, but these support transfer under the first-to-file rule just as readily as they do transfer under Section 1407. In fact, *Olsen* Plaintiff's papers provide a compelling argument that the *Olsen*, *Reilman*, *Lawrence* and *Gomez* actions must all be transferred to the Eastern District of Michigan under the first-to-file rule, as defendant in each of those cases has already moved.

## B.    Centralization Under § 1407 Is Unnecessary in Light of the First-To-File Rule

The Panel previously has denied centralization when there is a "reasonable prospect" that first-to-file or similar motions will eliminate the multidistrict character of the litigation. *See In re Gerber Probiotic Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379-81 (J.P.M.L. 2012). "Five of the ten actions on the motion are pending and consolidated in the District of New Jersey, where Gerber is headquartered and the marketing and advertising at issue purportedly emanated." *Id*. at 1379. [3] Likewise, here, four of nine actions are pending in the Eastern District of Michigan and a consolidation stipulation has been filed there. And also, as in *In re Gerber*, motions to transfer have been filed by Defendant in each on the four California cases. "While the Panel does

---

[3] Gerber subsequently moved its headquarters to Northern Virginia. *See In re Gerber Prod. Co. Baby Food Litig.*, No. 21-1977 (D.N.J. Sep. 13, 2021) (transferring cases to E.D. Va.).

not judge the merits of defendants' motions to transfer, certainly some reasonable prospect exists that the multidistrict character of this litigation could be resolved through resolution of the pending Section 1404 motions. *See In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368-69 (J.P.M.L. 2012) (denying centralization where one action had already been transferred pursuant to Section 1404); *In re Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) (denying centralization where Section 1404 motions were pending in the remaining actions)." *In re Gerber* 899 F. Supp. 2d at 1379. *See also In re Truvia Natural Sweetener Mktg. & Sales Practices Litig.*, 996 F. Supp. 2d 1377, 1378 (J.P.M.L. 2014) ("As we have previously held, 'centralization under Section 1407 should be the last solution after considered review of all other options,' including transfer pursuant to Section 1404 and the first-to-file rule.") (*citing Best Buy*, 804 F. Supp. 2d at 1378.).

*In re GM LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d 1413, 2021 (J.P.M.L. 2021), is particularly instructive. There, the Panel denied consolidation where the defendant automaker, headquartered in the Eastern District of Michigan, had filed Section 1404 motions in related cases in California and Illinois, and stated its intent to do so for newly filed cases in Texas. *See id.* at 1414. Relying on *Gerber* and *Best Buy*, the Panel held consolidation unnecessary because "there is at least a reasonable prospect that the courts outside the Eastern District of Michigan will grant Section 1404 transfer to that court, where five related actions are and defendant is headquartered." *In re GM LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d at 1415.

The *Olsen* Plaintiff's likely response that Defendant's first-to-file motion should be denied is not relevant to the analysis here. "Should that occur, the parties may file another Section

1407 motion, and the Panel will revisit the question of centralization at that time. *See, e.g.*, *In re Glaceau VitaminWater Mktg. & Sales Practices Litig. (No. II)*, 764 F. Supp. 2d 1349, 1350 (J.P.M.L. 2011) (centralizing litigation, in which prior motion to centralize had been denied, because filing of additional related actions undermined parties' prior agreement to voluntarily consolidate their actions)." *In re Gerber*, 899 F. Supp. 2d at 1381.

**C.    If the Panel Deems a Venue Transfer Is Appropriate, Judge Kumar of the Eastern District of Michigan Is Highly Qualified and the Appropriate Judge to Adjudicate These Matters**

In the event this Panel deems transfer appropriate, the 49 Eastern District of Michigan plaintiffs agree with Defendant that the Eastern District of Michigan is the most appropriate venue, and the Honorable Shalina D. Kumar is a well-qualified judge to preside over these matters for pretrial purposes to the extent permitted by the Panel.

The district court with the strongest nexus to the litigation is often selected as the transferee court. *See, e.g.*, *In re Reciprocal of Am. (ROA) Sales Practices Litig.*, 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003). For the following reasons, the Eastern District of Michigan has the strongest nexus to the litigation.

**1.    The Eastern District of Michigan Is Defendant's home district and will be the evidentiary center for the Actions.**

Defendant's headquarters in Auburn Hills, Michigan, Defendant's close proximity to the United States District Court for the Eastern District of Michigan, and the location of relevant evidence and witnesses are compelling reasons to transfer venue to the Eastern District of Michigan. *See In re Auto. Wire Harness Sys. Antitrust Litig.*, 844 F. Supp. 2d 1367, 1367-68 (J.P.M.L. 2012) (finding the Eastern District of Michigan "the most appropriate transferee district" where several defendants were located in the district). The location of Defendant's headquarters within the Eastern District of Michigan provides easy access to critical documents and witnesses

- 10 -

central to the litigation and common to the proposed related actions. Indeed, FCA describes its Auburn Hills, Michigan-based headquarters as "the world's only automotive headquarters where a vehicle can go from a sketch to a manufactured vehicle all under one roof."[4] *See In re FCA US LLC Monostable Elec. Gearshift Litig*., 214 F. Supp. 3d 1354, 1356 (J.P.M.L. 2016) (holding that the Eastern District of Michigan was the appropriate transferee district because defendant was headquartered in that district, and key witnesses and documents are located there); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig*., 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (transferring to the district where defendant maintains its corporate headquarters and "relevant documents and witnesses are likely located there"). Defendant's decisions regarding design, manufacturing, marketing and sales of the Defective Vehicles emanated from Michigan.

2.    **Forty-nine plaintiffs from 24 different states have already chosen to bring their cases in the Eastern District of Michigan**

Plaintiffs in *Huntington*, *Schumann*, *Findeiss*, and *Ramirez* have already chosen to bring their cases in the Eastern District of Michigan, which District Court – unlike all others – unquestionably has jurisdiction over claims asserted by FCA vehicle purchasers and lessees nationwide, including claims asserted under the laws of all fifty states and the District of Columbia, under the principles stated in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), and its progeny. No other judicial district has more than two cases, and in stark contrast, no other judicial district has been chosen by more than two plaintiffs, while 49 plaintiffs from 24 different states have chosen to bring their cases in the Eastern District of Michigan. Thus, the overwhelming consensus amongst plaintiffs is that the actions should proceed in the Eastern

---

[4] *An inside look at FCA US: Ramp up with FCA360*, FCA (Oct. 15, 2015), https://www.prnewswire.com/news-releases/an-inside-look-at-fca-us-ramp-up-with-fca360-300161180.html.

District of Michigan.

### 3. The Eastern District of Michigan is a convenient forum for all litigants.

The Eastern District of Michigan also provides a central and convenient location for the parties, counsel, and witnesses. The Federal courthouse is located approximately twenty-two (22) miles from the Detroit Metropolitan Wayne County Airport, one of the largest and most highly rated airports in the country, and therefore is easily accessible to all parties. *See In re Rio Hair Naturalizer Prod. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (finding the Eastern District of Michigan the appropriate transferee forum, in part, because it "provides a geographically central location for this nationwide litigation"); *In re UpJohn Co. Antibiotic "Cleocin" Prod. Liab Litig.*, 450 F. Supp. 1168, 1171 (J.P.M.L. 1978) ("in the context of the actions presently before us, the Eastern District of Michigan is in a geographically central and convenient location"). In light of the Eastern District of Michigan's connection to the litigation and its geographically central location, it is the most convenient forum.

### 4. Judge Shalina D. Kumar is an outstanding jurist who will efficiently and effectively manage the consolidated litigation.

The *Huntington*, *Schumann*, *Findeiss and Ramirez* actions have all been assigned or transferred to Judge Shalina D. Kumar. A consolidation stipulation is presently before the Court to bring those cases together into a single action. Judge Kumar is highly experienced and uniquely suited to efficiently and effectively manage this consolidated litigation.

Judge Kumar received her B.A. from the University of Michigan and law degree from the University of Detroit Mercy School of Law. Judge Kumar was a civil litigator in private practice from 1997–2007. In 2007, Judge Kumar was appointed to the Oakland County Circuit Court. In January 2018, the Michigan Supreme Court appointed Judge Kumar to be Chief Judge, and she was reappointed to that position in 2020.

- 12 -

In 2021, the Hon. Shalina D. Kumar became the first person of South Asian descent to be nominated for a federal judgeship in Michigan. She was sworn in as a U.S. District Court Judge for the Eastern District of Michigan in December 2021.

While Judge Kumar has not herself been assigned an MDL, the judges in the Eastern District of Michigan have a proven track record of managing MDLs relating to the automobile manufacturers, like FCA, that reside within the District. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d at 1356; *In re Auto. Wire Harness Sys. Antitrust Litig.*, 844 F. Supp. 2d at 1367-68. Judge Kumar's 14 years as a jurist and the wealth of experience in her courthouse readily equip her to efficiently and effectively manage this Detroit-based litigation.

**5.      There is no rational basis to transfer the actions to any court in California.**

In support of the contention that the actions should be consolidated and transferred to the Northern or Central District of California, Plaintiff Olsen makes six unavailing arguments:[5] (1) that "over half (4 of 7) of the related cases are already pending in California District Courts"; (2) "the California cases contain broader allegations than those asserted in the three Michigan District cases"; (3) "California is [Chrysler's] biggest minivan market in the country and [] 40% of all hybrids are sold in the State of California"; (4) "only 8.6% of civil cases in the Central District of California are over 3 years old, 8.9% in the Northern District of California are over 3 years old, while 10.9% in the Eastern District of Michigan are over 3 years old"; (5) "the Northern and Central Districts meet the criteria of providing a geographically convenient forum"; and (6) "Judge Davila and Judge Carney have significant MDL experience, whereas the other judges in

---

[5] Plaintiff Olsen's papers enumerate five reasons, but they have two "third" arguments. *See* Mot. at 13, 14.

the related cases do not."[6] None of these arguments supports transfer of the actions to a court in California for the reasons set forth below.

*First*, it is not true that "over half … of the related cases are pending in California District Courts." In fact, only four of nine cases are in California and four of nine are also in the Eastern District of Michigan (one of which, *Ramirez*, Movants left out of their list of related cases even though it was filed before they filed their Motion and failed to count in their Motion). Moreover, the argument conflates three separate California judicial districts, none of which has more than two cases. And more importantly, each California case is on behalf of a single minivan owner in California, while the cases in the Eastern District of Michigan are brought on behalf of 49 plaintiffs in 24 states. Clearly, the locale and substance of the related cases support transfer to the Eastern District of Michigan, and not a judicial district in California.

*Second*, it is not true that "the California cases contain broader allegations than those asserted in the three Michigan District cases." In fact, all of the ten claims the Olsen plaintiff identifies are in at least one of the *four* Eastern District of Michigan cases, and the Eastern District of Michigan cases also bring claims under the laws of 24 states, in addition to California claims. Thus, the breadth of claims brought also supports transfer to the Eastern District of Michigan, not a judicial district in California.

*Third*, the size of the minivan market in California is irrelevant to any factor traditionally considered by the Panel in choosing the transferee forum. Evidence of the acts underlying the claims here are not found with owners of the Chrysler Pacificas, it is found where the vehicles were designed and built, which is within the Eastern District of Michigan. Moreover, the corollary to the allegation that "40% of all hybrids are sold in the State of California" is that 60%—i.e., the

---

[6] Mot. at 13-14.

majority—are not. The evidentiary nexus of these cases is plainly the Eastern District of Michigan, and that many of the affected vehicles were sold in California does not change that fact.

*Fourth*, and as Olsen Plaintiff admits, "the Northern District of California, the Central District of California and the Eastern District of Michigan all have heavy caseloads." The two-percent delta in the number of civil cases that are over three years old is a cherry-picked statistic that has no bearing on how long this case will take to reach resolution in any of those venues.

*Fifth*, while it may be true that "the Northern and Central Districts *meet the criteria* of providing a geographically convenient forum" (emphasis added), the Eastern District of Michigan is undeniably a *more convenient* forum. In addition to being centrally located in the United States, and thus equidistant for plaintiffs from both coasts, it is home to the sole defendant in each of the related actions. Geography plainly prefers the Eastern District of Michigan to either judicial district in California.

*Sixth and finally*, the fact that Judge Davila and Judge Carney have had MDLs in the past does not mean that they are better equipped to handle this MDL than is Judge Kumar, a former Chief Judge in Oakland County Court in Pontiac, Michigan, whose present courthouse has handled legion automotive cases and MDLs. Moreover, the individual caseloads of the judges is perhaps more relevant than the caseloads of the districts in which they sit. Judge Kumar, as a recent appointee to the federal bench, has only 160 open cases on her docket, while Judge Carney has 369 and Judge Davila has 380.

## IV.    CONCLUSION

For the foregoing reasons, E.D. Mich. Plaintiffs respectfully request that this Panel deny Plaintiff Olsen's request to centralize these actions pursuant to § 1407. If, however, the Panel chooses to centralize pursuant to § 1407, E.D. Mich. Plaintiffs concur with Defendant that the

appropriate transferee forum is the Eastern District of Michigan before the Honorable Shalina D.

Kumar.

Dated: May 31, 2022                    Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman
Thomas E. Loeser
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

*Attorneys for Plaintiffs Lauren Huntington, Andrew Berzanskis and Margaret Wilensky, a married couple, Scott Carney, Nicole and Stephen Costa, a married couple, Michael Christie, Diane and David Davidson, a married couple, Michael Keeth, Alicia and David Maltz, a married couple, Diahann Messeguer, Elizabeth Niemioja, James Quattropani, Andrew Ventura, Spence Voss, Tracy Whitman Brace, Kent Schumann, Alexander Shusta, Owen Ryan, Tim Banas, John Latacki, Scott Lewandowski, Devlin Su, Ruth Hoffman, Richard Golland, Patricia Ransom, Helen Bartek, Michael Natale, John Spruance, Shawn Sheehan, Sean Clancy, Veronica Bryan, Matthew Bergantino, Tim Ferguson, Ami Benzur, Jared Gadomski Littleton, Christine Winter, Salyi Vu, Jacob Kitzman, and Chad Fong.*

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

- 16 -

*Attorneys for Plaintiffs Lauren Huntington, Andrew Berzanskis and Margaret Wilensky, a married couple, Scott Carney, Nicole and Stephen Costa, a married couple, Michael Christie, Diane and David Davidson, a married couple, Michael Keeth, Alicia and David Maltz, a married couple, Diahann Messeguer, Elizabeth Niemioja, James Quattropani, Andrew Ventura, Spence Voss, Tracy Whitman Brace, Kent Schumann, Alexander Shusta, Owen Ryan, Tim Banas, John Latacki, Scott Lewandowski, Devlin Su, Ruth Hoffman, Richard Golland, Patricia Ransom, Helen Bartek, Michael Natale, John Spruance, Shawn Sheehan, Sean Clancy, Veronica Bryan, Matthew Bergantino, Tim Ferguson, Ami Benzur, Jared Gadomski Littleton, Christine Winter, Salyi Vu, Jacob Kitzman, Chad Fong, Meagan Findeiss, Cal Findeiss, Clea Van Tol, Ladd Van Tol, Elias Ramirez, Michelle Tinio Ramirez, and Javin T. Olson.*

Stephen R. Basser
Samuel M. Ward
BARRACK, RODOS, & BACINE
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619)230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

Jeffrey W. Golan
BARRACK, RODOS & BACINE
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 963-0600
jgolan@barrack.com

John G. Emerson
EMERSON FIRM, PLLC
2500 Wilcrest Drive, Suite 300
Telephone: (800) 551-8649
jemerson@emersonfirm.com

*Attorneys for Plaintiffs Meagan Findeiss, Cal Findeiss, Clea Van Tol, Ladd Van Tol, Elias Ramirez, Michelle Tinio Ramirez, and Javin T. Olson.*

- 17 -